PROLER INTERNATIONAL
CORPORATION,
Plaintiff,

v.

HUGO NEU CORPORATION, Defendant.

Civil Action No. H–96–3289.

United States District Court,
S.D. Texas.

Nov. 15, 1996.

David T. Harvin, Vinson and Elkins, Houston, TX, for plaintiff.

Daryl Bristow, Cynthia Moulton, Houston, TX, for defendant.

*Opinion on Extraordinary Relief*

HUGHES, District Judge.

1.  *Introduction.*

One principal in several scrap-metal collecting joint ventures is being bought by a

third-party competitor, and the other principal has moved to compel arbitration of the proposed post-acquisition merger. The company being acquired wants to stop the arbitration. Under the joint-venture agreements, the principal's agreement to arbitrate does not cover transactions in its corporate organization, including equity sales and mergers.

### 2. Parties.

Proler International Corporation is the lead company in a cluster of corporations in scrap metal collection. One of its subsidiaries is a principal in three joint ventures that date back to the 'sixties. For the purposes of this stage of the proceedings, all of the Proler entities will be collapsed into one. The assumption is that they are all bound by the historic agreements about the ventures.

Hugo Neu Corporation is similar to Proler. It is in the scrap business, and it has multiple related companies. It is a venturer with Proler in three scrap operations. These businesses are in Boston, Jersey City, and Los Angeles.

In addition to their ventures together, Proler and Neu each operates independently in the scrap metal industry, competing to some degree with each other and their joint ventures. The parties have a third partner in the Jersey City venture, the Schiavone Bonomo Corporation. Also, Neu is a venturer in non-Proler operations.

Schnitzer Steel Industries, Inc., is a participant in scrap-metal collection like Proler and Neu except that Schnitzer owns a mill that converts the processed scrap back into a form useful by rolling and fabrication mills. Schnitzer's principal operations are in Oregon and Northern California.

### 3. Proceedings.

Neu sued Proler in New York the day before Proler sued Neu in Texas. Proler dropped one suit and refiled in the same day. Neu filed a second suit in New York seeking a halt to this action's interference with the arbitration that it also initiated in New York.

This court held a conference on October 24, 1996, to ascertain what emergency relief was needed and how all the proceedings were related. At that conference, a hearing was set to determine from the stipulated record whether immediate relief was needed. If the court was going to enjoin the merger or the interference with it and if there was critical evidence that could not be produced through documents, another hearing would be held a few days later.

The judges in New York and Texas conferred to avoid ruling inconsistently and to coordinate the duplicative actions. As a consequence, this court is proceeding with all litigation related to the Proler–Hugo dispute.

### 4. Offer for Proler.

Proler's danger of liquidity was public knowledge in mid-July. Neu offered to acquire Proler's interests in their joint ventures. Proler rejected Neu's offer.

Before Proler rejected Neu's offer, Schnitzer had already expressed an interest in acquiring Proler. On September 16, Proler and Schnitzer announced an agreement and proposed merger. Schnitzer offered Proler's shareholders $7.50 per share. The offer is conditioned on a majority of Proler's stock being tendered, which has already occurred. The offer was to expire October 18, but it has been extended twice. After the oral rendition of this decision, Schnitzer extended its offer to November 15.

### 5. Neu's Objections.

Neu objects to Schnitzer's deal with Proler on several grounds:

- Proler's shareholders tendering their stock to Schnitzer is a prohibited transfer, especially when the proposed merger is included.

- Schnitzer's market dominance and its competition with the Neu–Proler joint ventures.

- Schnitzer's access to the joint ventures' confidential business information.

- Schnitzer's participation in the management of the ventures because it will create an impasse since unanimity is required among the principals.

### 6. *Contract.*

The joint ventures were created by Neu and Proler in the 'sixties. Each of them has parallel provisions. Three sections are invoked by Neu.

#### A. *Arbitration Text.*

The joint-venture agreements have arbitration clauses; Neu and Proler agreed that "all disputes between the parties arising out of this Agreement or the operation of the joint venture shall be determined by arbitration." *See* ¶ 16, Exhibit 3.

#### B. *NonTransfer Text.*

Neu and Proler agreed not to permit transfers of the joint-venture interests without consent. The paragraph that prohibits transfers of the joint-venture interests expressly allows that

(a) either party may merge, consolidate, or reorganize without the consent of the other; and (b) either party may offer its stock to the public or others, transfer its stock, or issue additional stock, without the consent of the other.

*See* ¶ 13, Exhibit 3 (*emphasis added*).

#### C. *Management.*

Neu and Proler bound themselves that "[a]ll matters and questions pertaining to the affairs of the joint venture shall be determined by the unanimous decision of both [sic] parties." *See* ¶ 11, Exhibit 3.

### 7. *Merger & Arbitration.*

■ Neu contends the proposed merger is a prohibited alienation of the joint venture interests. It is not. Neu contends that the decision whether an event is covered by the agreement is for the arbitrators. All questions of the real-world worth—the merits—of an arbitrable claim is for the arbitrators, but the decision about the scope of the clause is for the court. If the issue in question was not covered by the contract, the arbitrators have no authority; the other interpretation would compel a party to a limited arbitration agreement to arbitrate every claim at least to the point of an arbitration decision that it was not covered.

■ Under the contract, a transfer that is "prohibited" carries an initial remedy for the aggrieved party. The contract specifies that a transfer in violation of the restriction loses the authority to participate in the management of the venture. In effect, that interest becomes "non-voting." Before an arbitrable claim could arise under the transfer provision, Proler would need to have "transferred" its interest by merging *and* in the context of an actual business decision about the operation of a venture Neu would have to assert that Schnitzer could not vote its newly acquired interest. At that point, Schnitzer arguably could require arbitration. Parenthetically, even if the Proler–Neu interest becomes non-voting, Neu would be under the same duty as it is now to manage the ventures in the best interest of all the owners.

■ No issue can reasonably be raised about Schnitzer's purchase of Proler's stock. The Proler corporate entity is bound to the non-transfer contract; Schnitzer and Proler's shareholders are not parties to the contract.

The post-acquisition merger is equally uncontestable by Neu. The plain text of the contract permits the precise type of transaction that is proposed. Since 1962, both Neu and Proler have gone through corporate evolutions, and while they have exchanged hostile letters about some of the plans, none has been arbitrated.

The contractual definition of sale of joint venture interests excludes alienation or mutation of the corporate identity. The agreement's plain text removes Neu's capacity to transform an internal corporate decision into an arbitrable joint-venture claim.

### 8. *Management & Arbitration.*

■ Neu also claims that the merger will result in an impasse since management of the ventures requires unanimity. This claim is at least premature. The ventures are operating—scrap is being delivered, processed, stored, sold, and shipped. No impasse exists.

### 9. *Trade Secrets.*

Neu and Proler have two disagreements over the use of jointly-controlled documents. First, Neu attacks Proler's disclosure of in-

formation about the ventures in its merger talks with Schnitzer. Second, Neu says that it does not have to assist Proler in its disclosures to the Justice Department for approval of the merger.

■ Laying aside earlier squabbling, Proler and Neu revised their confidentiality agreement on October 1. Despite the agreement, Neu has prevented Proler's counsel from obtaining access to computer documents needed to respond to the attorney-general's second request. The documents are located at a joint Proler–Neu venture in Los Angeles.

The revised agreement allows disclosure back to June 11. Neu agreed to cooperate with Proler in its accounting review for the merger, both to Schnitzer and the Justice Department.

The only possible arbitrable issue raised by Neu has been mooted by the revised agreement. Neu argues to compel arbitration about trade secrets that may have been divulged during merger negotiations. Although the agreement covers disclosures after June 11, the disclosure is identical whether made before or after then, and Neu has not suggested the existence of an actual injury from the earlier disclosure other than its abstract rights. No matter how broad the form of the arbitration clause, it cannot be used to perpetuate a just-settled controversy.

### 10. *Tortious Interference.*

■ Proler sued Neu for interference with Schnitzer's offer and proposed merger. Proler characterizes Neu's reluctance to release documents about the Proler–Neu venture to the justice department for its antitrust review as "obstructionist" and Neu's insistence on arbitrating about the sale of equity as "bad faith." Parties to a large merger must routinely comply with requests made by the Department of justice for information about a merger.

Neu has not acted in bad faith in its pleadings, and its conduct has not been tortious. Neu's reluctance to disclose confidential data in the joint control of the Neu–Proler joint enterprise does not amount to tortious interference with the offer. Neu has fiduciary duties towards its own shareholders; it must protect the interests of its own shareholders.

Although the joint venture necessarily creates a natural, inherent tension in their competitive interests, both are equally entitled to protect their separate and joint interests in the scrap metal business. Neu and Proler are joint competitors in a scrap business with competitive interests. Neu's posturing or stalling about permitting release or access of data needed for negotiations for the Proler–Schnitzer merger may have been wrong, unpleasant, and petty but it was not tortious.

### 11. *Arbitration of the Tort?*

Neu argues that if Proler advances a tortious interference claim about the tender offer, it is within the scope of the venture agreements' arbitration provisions. The core of Neu's argument is that the arbitration clause and other provisions must be construed together to resolve the dispute between the parties. Even if the court must read two paragraphs of the contract to decide that a particular claim is not covered by the arbitration clause, it is still a decision for the court. The transfer clause's exception for mergers makes them beyond the arbitration clause's scope. Neu cannot interfere with one of Proler's business relations totally unconnected to the ventures and defend the tort claim by invoking the venture contract.

### 12. *Anti-trust.*

Although Neu has not pleaded a particular anti-trust claim, anti-trust implications are manifest in everything that Neu says about the Schnitzer–Proler merger. Assuming the merger of Proler into Schnitzer puts Neu at a competitive disadvantage and assuming that the particular disadvantage to be actionable, the business of the joint ventures does not include public-law antitrust claims against the corporate parents.

The anti-trust implications are about Schnitzer's potential as a predator; Neu believes its potential size as a competitor will be harmful to the venture's interests. There are four principals actively participating in the scrap metal industry: Neu, Proler, Bonodo, and Schnitzer. They have

these ventures, direct operations, and other joint ventures. In California, for instance, Neu's direct operations in Oakland compete with the Neu–Proler venture in Los Angeles; Schnitzer operates in Stockton.

Neu has argued only that the merger *may* have anti-trust implications. Issues of competitive injury in the industry generally are not part of the joint-venture operations.

13. *Jurisdiction.*

■ Neu had pleaded that it was not within this court's jurisdiction because it was not purposefully and substantially present in Texas, but before that plea had been heard, it moved to compel arbitration. Having invoked this court's authority for its own uses, Neu is precluded from allowing Proler to use it for its purposes.

14. *Conclusion.*

As the acquisition of Proler has developed, the only claim between Neu and Proler that has reached the stage of active conflict at law is the attempt by Neu to use arbitration as a wrench in the gears of the merger. Once compulsion is denied to Neu's sideshow, no imminent harm nor past wrong is presented. The complex, multivalent processes of the market for corporate control may erupt in a crisis that qualifies for judicial intervention so this analysis may change on reexamination of the issues once additional events occur.